IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. : 11-CIV-62483-SCOLA/ROSENBAUM

CHETU, INC.,

       Plaintiff,

vs.

TERRY W. OWEN,

       Defendant.

_____/

## PLAINTIFF'S REPLY IN SUPPORT OF
## MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Chetu, Inc. ("Chetu") replies in support of its motion for a preliminary injunction [DE6] (the "Motion") and to address the response in opposition [DE 9] by Defendant Terry W. Owen ("Owen"), and states:

## I. REPLY

**A.    Chetu demonstrates a likelihood of success.**

Chetu put forward two mutually exclusive bases for injunctive relief: (1) under Florida's Uniform Trade Secrets Act[1] (Count 1); and (2) under its breach of restrictive covenant claim (Count 5). Chetu need only demonstrate a likelihood of success for one claim.

    *1.    Chetu demonstrates a likelihood of success on its FUTSA claim.*

Chetu's first and primary basis for injunctive relief is made to this Court in conjunction with Chetu's claim for misappropriation of trade secrets. Chetu devotes the majority of its motion to this basis. Owen offers a mere sentence in opposition.[2]

---

[1]    §§ 688.001, *et seq.*, ("FUTSA").

[2]    *See* DE 9 at 6. Otherwise, Owen's argument would seek to herd this Court into the misconception that Chetu's claim for violation of FUTSA is limited and metered by section

1

      *i.     Owen fails to controvert Chetu's evidence showing the materials constitute trade secrets under FUTSA.*

Owen lacks personal knowledge of how Chetu developed the Customer List Report and Lead List Report, according to his responsive pleading [DE 13]. Chetu verified allegations evidencing that the Customer List Report and Lead List Report are compilations of data laboriously developed and created in secrecy by Chetu, out of the public view, with independent economic worth. For example, Chetu swore to the following:[3]

> 76.    Chetu did not acquire the Customer List Report or its data from a third party.
>
> 77.    Chetu prepared the Customer List Report.
>
> 78.    The data populating the Customer List Report comes from Chetu's current and historical operations.

Owen responded and stated that he lacked knowledge sufficient to admit or deny these allegations.[4] Putting aside the veracity of Owen's response, what is beyond debate is that Owen is representing to this Court that he lacks personal knowledge of the origin, promulgation, and development of the Customer List Report and Lead List Report.

Consequently, when Owen makes a vague averment that "[m]uch of the information that Chetu claims is confidential is publicly available information that came from public sources," [DE 9-1, ¶11] he does not and <u>cannot</u> mean for that statement to regard the Customer List

---

542.335, Florida Statutes, the key statute on restrictive covenants. While there is often overlap of these two sorts of claims, the Court should not permit confusion of the elements, standards, and evidence. In effect, Owen's response is virtually bereft of explanation – let alone legal argument or admissible evidence – regarding Chetu's misappropriation of trade secrets claims. The near-silence by Owen is telling. Chetu's arguments and evidence are effectively uncontroverted and Chetu shows a substantial likelihood of success on this claim.

[3]     *See also* DE 1 at ¶¶ 98-100 (mirroring allegations as to Lead List Report).

[4]     DE 1 at 7, ¶¶ 76-78, 98-100; *compare* DE 13, ¶¶ [same].

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
1000 Brickell Avenue, Suite 600, Miami, Florida 33131 • (305) 377-0086

Report, Lead List Report, or even the Kiosk Show Leads[5] report. Even if he did mean to regard these materials, Owen's professed lack of personal knowledge nullifies the averment. Unless Owen intends on reversing his statements in the responsive pleading when testifying at an evidentiary hearing, Owen has not and cannot controvert Chetu's sworn position on the facts adduced to demonstrate Chetu's trades secrets meet FUTSA's definition. Owen presents no evidence or colorable argument that, e.g., the Customer List Report is not a protected trade secret in his one sentence on Count 1.

ii.   *Owen admits or tacitly admits the misappropriation acts.*

Owen admits or tacitly concedes and admits having e-mailed the Customer List Report and other confidential materials to himself.[6] He admits accessing Chetu's database, downloading, and conveying certain information to his personal e-mail address (Customer List Report, Lead List Report, etc.) just prior to his immediate, midnight-resignation.[7] Owen admits deleting the incriminating e-mails.[8] Consequently, Chetu shows a likelihood of success for demonstrating misappropriation. Owen's declaration fails to explain any ownership, right, or license. Owen fails to controvert or even regard Chetu's sworn allegations demonstrating that Owen solicited at least one Chetu customer.[9] Over and over again, Owen concedes that the e-

---

[5]   *See* DE 1 at ¶¶ 126-132 (describing Kiosk Show Leads report and Owen's misappropriation by e-mail).

[6]   *See, e.g.*, DE 1 at ¶¶ 53, 61-62; 94-95; 126-132; *compare* DE 13, ¶¶ [same].

[7]   *See, e.g.*, DE 1 at ¶¶ 50-51, 61-63, 65-72; *compare* DE 13, ¶¶ [same].

[8]   DE 1 at ¶ 18; *compare* DE 13, ¶¶ [same].

[9]   DE 1 at ¶¶ 142-150, Exh. 3 [DE 1-3]; *compare* DE 13, ¶¶ [same].

3

mails and other documents referenced in the Verified Complaint speak for themselves.[10] Indeed, they do. Owen misappropriated Chetu's trade secrets under both the acquisition theory and disclosure theory of section 688.002, Florida Statutes.

Owen's declaration fails to so much as regard the misappropriation acts. Owen simply prevails upon this Court to find that the misappropriated materials are not protectable business interests under section 542.335. Owen does not even address the applicable law[11] and therefore fails to rebut Chetu's case.

      *iii.*     *Owen's evidence is inadmissible and fails to address swathes of conduct.*

Generally, Owen offers no substantial or admissible evidence in opposition. Owen argues that the only evidence supporting the Motion is the "self-serving verification of Chetu's version of the facts."[12] Putting aside the veracity of Owen's declaration in opposition, the summary evidence before the Court militates in favor of Chetu for three reasons. First, Owen's own declaration is too vague to be admissible evidence. Second, Owen's responsive pleading represents his wide-ranging lack of personal knowledge on key issues and facts, thereby truncating the import of his declaration. Third, Owen's evidence offers no logical or legal explanation for the alleged wrong-doing. Owen's silence is fatal. Owen offers no regard or explanation for his late-night downloading of Chetu's Customer List Report, Lead List Report, and Kiosk Show Leads in the days leading up to his immediate, midnight resignation. Owen offers no explanation for his e-mail to a Chetu client soliciting that client for Owen's new

---

[10]     *See, e.g.*, DE 1 at ¶¶ 62-63, 65-72; *compare* DE 13, ¶¶ [same].

[11]     §§ 688.001, *et seq.*, Fla. Stat.

[12]     DE 9 at 3.

4

employer. Moreover, Owen's casual disregard of these e-mails and his solicitation e-mail to Chetu's client is at odds with his disingenuous statement that Chetu's <u>only</u> evidence is "self-serving verification of Chetu's version of the facts."

> **2.  Owen fails to rebut Chetu's likelihood of success on its breach of restrictive covenants claim.**

In the Motion, Chetu still shows a likelihood of success on its claim for breach of restrictive covenant (Count 5), including demonstrating at least one instance of solicitation of a client by Owen. It only takes one breach to breach a restrictive covenant.

Notably, on the first element (existence of an enforceable contract), Owen offers no evidence or authority regarding the reasonableness of the terms of the restrictive covenant. Owen merely attacks whether Chetu's confidential material and trade secrets are legitimate business interests supporting the restrictive covenants. As set forth in the Motion, Chetu's sworn pleading describes the secrecy, effort, exclusivity, and worth of those materials and Owen fails to controvert Chetu's averments. In contrast, for the reasons described above in the misappropriation of trade secrets discussion, Owen professes a lack of personal knowledge as to how Chetu developed and compiled the Customer List Report and the Lead List Report. Owen also professes a lack of knowledge as to the safeguards and protections Chetu uses for the subject materials.[13] Consequently, Owen cannot – in good faith – argue that those materials are not trade secrets, other, protected confidential material under section 542.335, Florida Statutes.

Chetu established a breach of Owen's restrictive covenants for Owen's solicitation of Chetu's customer. Owen offers no evidence, legal excuse, or even an explanation for his breach

---

[13]     *See, e.g.*, DE 1 at ¶¶ 83 ("Access to the Customer List Report is restricted by Chetu."), ¶¶ 56-60 (describing Chetu's controls on access to sales and client database); *compare* DE 13, ¶¶ [same].

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
1000 Brickell Avenue, Suite 600, Miami, Florida 33131 • (305) 377-0086

of the non-solicitation clause. Owen fails to explain or so much as regard his e-mail solicitation of Chetu's client. Further, Owen does not simply ignore the solicitation evidence, he makes arguments that seem ignorant of it – as if the Court will likewise have a blindspot for Exhibit 3 to the Verified Complaint and paragraphs numbers 142-150. To wit, Owen makes the ribald claim that he "not contacting customers of Chetu."[14] Yet, Owen admits in his responsive pleading to making the e-mail solicitation[15] of Chetu's client[16] – Owen effectively admits to "contacting customers of Chetu" in his answer. Owen's argument is illogical, at odds with the summary evidence, and therefore not credible.

Next, Owen argues that his new employer "does not compete with Chetu."[17] This argument is immaterial because Chetu does not restrict Owen from working for competitors.[18]

Finally, Owen argues that he "does not intend to solicit Chetu's customers." Welcome as that assertion is, it stands in conflict with Owen's undisputed actions. If Owen does not presently intend to solicit Chetu's customers, there is no other explanation for what his intentions were as he secreted away those materials and attempted to cover his tracks by deleting his company e-mails, or when he contacted Chetu's client. Owen fails to offer any explanation for his actions in his declaration or opposition-brief.

---

[14]    DE 9 at 3. Owen repeats this patently false statement on page 4 ("Owen has not contacted … any of Chetu's clients or specific prospective clients of Chetu…."). *Contrast* DE 1-3.

[15]    DE 1-3 (Compl. Exh. 3) (Owen's e-mail solicitation to Chetu client).

[16]    *Compare* DE 1, ¶¶ 143-149; and DE 13 [same] (not denying but rather admitting that Complaint Exhibit 3 speaks for itself).

[17]    DE 9 at 2.

[18]    But the assertion begs the question why, if Next Sphere does not compete with Chetu, is Owen soliciting the business of Chetu's client? Again, Owen's argument is illogical, at odds with the summary evidence, and therefore not credible.

PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
1000 Brickell Avenue, Suite 600, Miami, Florida 33131 • (305) 377-0086

**B.**     **Chetu is suffering irreparable harm.**

For the reasons in the Motion, Chetu demonstrates a rebuttable presumption of irreparable harm including under its breach of restrictive covenants claim.

Owen fails to rebut the irreparable harm. Owen does not so much as regard – let alone explain – his wrongdoing. Instead, Owen offers a declaration intended to suggest he is capitulating to Chetu's demands, and therefore injunctive relief is not necessary. But Owen's declaration is vague and evasive, raising more concerns and pacifying none.

For example, Owen declares that he has not "obtained any business,"[19] as opposed to addressing his contact, communications with, and solicitation of Chetu's clients. Simply because Owen has not found pecuniary success in his wrong-doing does not obviate the need for injunctive relief. This averment is illusory.

Similarly, Owen does not agree to comply with his restrictive covenants. Owen purports to now police his conduct and not contact "Chetu customers with which it had substantial business relationhips [sic] at the time of my termination from Chetu and of which I am aware."[20] Putting aside the fact that Owen was not terminated but resigned without notice, this averment does meet Owen's obligations under his restrictive covenant [DE 1-1], where Owen agreed he "shall not, directly or indirectly or through another party: contact, work for, solicit … any of

---

[19]     DE 9-1, ¶ 5. ("I have not obtained any business, either personally or on behalf of my current employer, Next Sphere Technologies, Inc. ("Next Sphere") through any contact with current or prospective Chetu customers either prior to or after my termination from Chetu.")

[20]     DE 9-1 at 2, ¶ 6.

PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
1000 Brickell Avenue, Suite 600, Miami, Florida 33131 • (305) 377-0086

[Chetu's] clients, … or potential clients introduced during the course of employment."[21] So, Owen's promise is illusory and deficient.

Owen purports to have destroyed "any information relating in any way to my employment with Chetu." Chetu's employment of Owen could be construed as being limited to documents like Owen's pay-stubs or performance reports. Chetu painstakingly details specific documents, e-mails by date and time, and more. Owen certifies destruction of <u>none</u> of these things, let alone permanent destruction or the absence of copies, back-ups, or distribution of same. This averment is illusory and does not relieve the imminent harm.

Similarly, Owen declares he has not disclosed any "confidential information of Chetu" to Next Sphere.[22] But this averment is illusory and meaningless because throughout his response brief,[23] his responsive pleading, and just three paragraphs down in his declaration, Owen disputes that the subject trade secrets and confidential material are <u>confidential</u>. Rather, Owen declares the trade secrets being litigated are "publicly available information that came from public sources."[24] Consequently, Owen's declaration is meaningless because in his mind there is no confidential material present in this case.

---

[21]     DE 1-1 at 1, ¶ 5.

[22]     DE 9-1 at 2, ¶ 8.

[23]     *See, e.g.,* DE 9 at 5 ("The information claimed by Chetu to be confidential, in fact, is not.").

[24]     DE 9-1 at 2, ¶ 11.

PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
1000 Brickell Avenue, Suite 600, Miami, Florida 33131 • (305) 377-0086

C.    **Owen fails to show an injunction's harm to him would exceed that to Chetu.**

For the reasons in the Motion, Chetu does not seek to restrict Owen's right to work, including his right to work for Next Sphere. Chetu merely wishes to prevent unfair competition with the use of its confidential material and trade secrets.

Absent from Owen's brief is any suggestion or inference of harm to him. Owen's only suggestion of potential harm is that he "would be exposed to potential negative consequences with his current employer"[25] were an injunction entered. The vague inference Owen posits is that the embarrassment of an injunction would negatively complicate his new employment. But that "potential" harm is just that – and it is illusory. Owen can and does continue to work for Next Sphere. In fact, he seems to be a prized employee: Owen is enjoying legal representation from Next Sphere's counsel, who – before appearing in this case – issued correspondence to undersigned counsel on behalf of Next Sphere. Because Owen's legal defense is coordinated with Next Sphere and by Next Sphere's outside legal counsel, Owen's fear of "potential negative consequences" rings hollow.

Owen would not be prejudiced by an injunction. Owen would not be barred or moved to take any action that he (purportedly) has not already accomplished. It is hardly exaggeration to state that if Owen does and has done as he says, he could comply with an injunction in his sleep.

As for Owen's complaints about the affirmative relief sought in the injunction, Chetu seeks nothing that it would not gain in discovery or under a litigation hold already imposed by controlling law. If the Court disagrees, however, it has considerable discretion shaping the contours of injunctive relief.

---

[25]    DE 9 at 6.

9

**D.**     **Owen fails to rebut Chetu's showing on promotion of the public interest.**

Owen's sole argument, without citation to authority, complains that an injunction would "unnecessarily police the parties' conduct."[26] Owen's public policy argument is unsupported by authority and conflicts with the very existence of FUTSA and section 542.335, Florida States. This Court, and all applicable courts, have been given statutory authority to "police" the conduct of parties in situations just like this. Moreover, Chetu had injunctive relief available under its common law counts, like conversion. But the Florida Legislature has, in its wisdom, codified rules for situations just like these. This Court is asked by the Florida Legislature to police the parties' conduct in order to promote the public interest. An injunction would not prevent Owen is from working or earning a livelihood. The injunction would protect Chetu's investment of time, funds, labor, and employment of dedicated sales staff now competing with their former leader.

Dated:  December 19, 2011.              Respectfully submitted,

                                        /s/ Joshua Spector
                                        Paul D. Turner (0113743)
                                        pturner@pbyalaw.com
                                        Joshua B. Spector (0584142)
                                        jspector@pbyalaw.com
                                        PERLMAN, BAJANDAS, YEVOLI &
                                        ALBRIGHT, P.L.
                                        200 South Andrews Ave. Suite 600
                                        Ft. Lauderdale, FL 33301
                                        Telephone: (954) 566-7117
                                        Facsimile: (954) 566-7115
                                        Attorneys for Plaintiff, Chetu, Inc.

---

[26]     DE 9 at 7.

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Joshua Spector_____
Counsel of Record

## SERVICE LIST

Darryl R. Richards (0348929)
darrylr@jpfirm.com
Aleksas A. Barauskas (0068175)
aleksasb@jpfirm.com
JOHNSON, POPE, BOKOR,
RUPPEL & BURNS, LLP
P.O. Box 1100
Tampa, FL 33601-1100
Telephone: (813) 225-2500
Facsimile: (813) 223-7118
Attorneys for Defendant
*Available for service via CM/ECF*

Paul D. Turner (0113743)
pturner@pbyalaw.com
Joshua B. Spector (0584142)
jspector@pbyalaw.com
PERLMAN, BAJANDAS, YEVOLI &
ALBRIGHT, P.L.
200 South Andrews Ave. Suite 600
Ft. Lauderdale, FL 33301
Telephone: (954) 566-7117
Facsimile: (954) 566-7115
Attorneys for Plaintiff Chetu, Inc.
*Available for service via CM/E*

11